**IN THE
UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| Save Jobs USA<br>       *Plaintiff*,<br>  *v.*<br>U.S. Dep't of Homeland Security<br>       *Defendant*,<br>  *and*<br>Anujkumar Dhamija, *et al.*<br>       *Intervenors*. | Civil Action No. 1:15-cv-00615 (TSC) |

**PLAINTIFF'S REPLY
ON CROSS-MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

Table of Authorities ............................................................................................... ii

Introduction.............................................................................................................1

Argument.................................................................................................................1

    I. Intervernors' claim of hardship to its members from a preliminary injunction is inconsistent with its claim that this case should be stayed because it will be "moot imminently."......................................................1

    II. Save Jobs USA suffers harm from the H-4 Rule. ...........................................2

    III. Save Jobs USA addressed the issues the Court previously found lacking. ...................................................................................................2

    IV. Intevenors' claim of delay is without merit......................................................3

    V. DHS uses the wrong standard for irreparable harm. .....................................4

Conclusion ...............................................................................................................5

## TABLE OF AUTHORITIES

Case Law:

*AICPA v. IRS*, 804 F.3d 1193 (D.C. Cir. 2015) ...................................................... 2

*Doe v. Trump*, No. 19-36020,
  2020 U.S. App. LEXIS 14169 (9th Cir. May 4, 2020) ....................................... 5

*E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242 (9th Cir. 2020) ................ 5

*HIAS, Inc. v. Trump*, 415 F. Supp. 3d 669 (D. Md. 2020) .................................... 5

*Int'l Internships Programs v. Napolitano*,
  798 F. Supp. 2d 92 (D.D.C. 2011) ...................................................................... 5

\**Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ......................................................... 2

*Mexichem Specialty Resins, Inc. v. EPA*,
  787 F.3d 544 (D.C. Cir. 2015) ............................................................................ 4

*Save Jobs USA v. United States Dep't of Homeland Sec.*,
  942 F.3d 504 (D.C. Cir. 2019) ........................................................................ 1–1

*Save Jobs USA v. United States Dep't of Homeland Sec.*,
  105 F. Supp. 3d 108 (D.D.C. 2015) .................................................................... 3

*Smith v. Whitaker*, 734 A.2d 243 (N.J. 1999) ....................................................... 4

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981) ................................................. 4

*Wis. Gas Co. v. Fed. Energy Regulatory Com.*,
  758 F.2d 669 (1985) ............................................................................................ 4

Other Authorities:

5 U.S. Code § 706 .................................................................................................... 4

Employment Authorization for Certain H-4 Dependent Spouses,
  80 Fed. Reg. 10,284–312 (Feb. 25, 2015) .......................................................... 1

## INTRODUCTION

This case is an Administrative Procedure Act ("APA") challenge to the U.S. Department of Homeland Security ("DHS") regulation, Employment Authorization for Certain H-4 Dependent Spouses, 80 Fed. Reg. 10,284–312 (Feb. 25, 2015) ("H-4 Rule"). That regulation authorizes certain spouses of H-1B non-immigrant guestworkers (H-4 visa holders) to work in the United States, as well. The members of Save Jobs USA, plaintiff, are American computer professionals who were longtime employees of Southern California Edison until they were replaced by H-1B non-immigrant guestworkers. They allege that the H-4 Rule is in excess of DHS authority. Compl. ECF 1. Intervenors have moved for a stay of proceedings, asserting that DHS will "moot imminently" this case. Mot. Br. 1, ECF 52-1 at 1.

Save Jobs USA suffers ongoing competitive injury from the H-4 Rule. *Save Jobs USA v. United States Dep't of Homeland Sec.*, 942 F.3d 504 (D.C. Cir. 2019). Therefore, Save Jobs USA has made a cross-motion for a preliminary injunction prohibiting DHS from granting new work authorizations during any stay in order to prevent the H-4 Rule from increasing Save Jobs USA's harm. Resp. Br., ECF 53.

## ARGUMENT

**I. Intervenors' claim of hardship to its members from a preliminary injunction is inconsistent with its claim that this case should be stayed because it will be "moot imminently."**

In arguing for a stay, Intervenors asserted that this case "is likely to become moot imminently" because of new DHS rulemaking that will eliminate H-4 employment. Mot. Br., ECF 52-1 at 1, 3, 5–8. Yet Intervenors now argue that a preliminary injunction to prevent increased injury to Save Jobs USA during such a stay "would impose severe hardship on Intervenors' members." Resp. Br., ECF 55 at 11. It is impossible to imagine how an injunction that would prevent additional H-4 workers from entering the job market (while allowing those non-immigrants with current work authorizations to remain) would cause severe

1

hardship if a complete end to H-4 employment will come "imminently." *See* Mot. Br., ECF 52-1 at 1. The proposed preliminary injunction could only cause severe hardship if an end to H-4 employment were far off in the future. *See* Proposed Order, ECF 54-2. In that case, it would be entirely inequitable for the Court to grant Intervenors' motion for a stay while forcing Save Jobs USA alone to endure the harm caused during the stay. If Intervenors want a stay, they should share at least some of the resulting harm. *See Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (a stay must maintain an "even balance"). Furthermore, if Intervenors had faith that an end to H-4 employment was imminent, they would not be concerned about harm from the balanced injunction Save Jobs USA has requested, that would allow work to continue on current H-4 work authorizations but not allow the program to expand through new work authorizations. Proposed Order, ECF 54-2.

## II. Save Jobs USA suffers harm from the H-4 Rule.

Intervenors claim that there is "no logical basis to conclude that Save Jobs' members are still suffering harm on account of the H-4 rule." Resp. Br., ECF 55 at 6. The D.C. Circuit disagrees. *Save Jobs USA v. United States Dep't of Homeland Sec.*, 942 F.3d 504 (D.C. Cir. 2019). The courts use "basic economic logic" to conclude that allowing increased competition causes harm. *AICPA v. IRS*, 804 F.3d 1193, 1198 (D.C. Cir. 2015). It is now established that the H-4 Rule causes injury to Save Jobs USA members. *Save Jobs USA*, 942 F.3d at 510. Intervenors' claim that Save Jobs USA will not suffer harm from a stay is completely without merit. *Id.*

## III. Save Jobs USA addressed the issues the Court previously found lacking.

Intervenors claim that Save Jobs USA "has failed to address, much less cure, many of the findings that led this Court to deny its first attempt to seek a preliminary injunction." Resp. Br., ECF 55 at 8. This is entirely incorrect. Save Jobs USA directly addressed the Court's previous concerns by citing the studies pro-

vided by *amici* on appeal, as well as citing the D.C. Circuit's opinion, both of which directly address this Court's concern about inadequate evidence in the previous preliminary injunction motion. *Save Jobs USA v. United States Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 115 (D.D.C. 2015). There is no longer any doubt that Save Jobs USA members face economic harm from the H-4 Rule. Not only are H-4 non-immigrants allowed to enter the computer job market, but also that market is their most likely destination. *See* Resp. Br., ECF 54 at 6 (citing studies).

### IV. Intevenors' claim of delay is without merit.

Intevenors assert that there was inexcusable delay in seeking a preliminary injunction. Resp. Br. at 9. This argument is bizarre because, as Intervenors note, Save Jobs USA had requested a preliminary injunction immediately. Resp. Br., ECF 55 at 8. The timing of the renewed preliminary injunction motion reflects the changed circumstances of the case. The parties have now spent five years litigating whether Save Jobs USA has standing to litigate. Compl. ECF 1 (Apr. 23, 2015). During that time the courts were repeatedly burdened with motions for delays to allow DHS to do new rulemaking that never materialized. *E.g.*, Defendant-Appellee's Motion to Hold Proceedings in Abeyance Through December 31, 2017, *Save Jobs USA v. United States Dep't of Homeland Sec.*, 942 F.3d 504 (D.C. Cir. 2019) ECF 1695208. Now there is a motion for yet another indefinite delay for the identical reasons given for the previous pointless delays. Mot. Br., ECF 52.

Given those circumstances, it is entirely appropriate for Save Jobs USA to seek an injunction now to prevent an *increase* in injury caused by the addition of even more non-immigrant labor into the computer job market during such a delay. Intervenors suggest Save Jobs USA should have made its motion immediately after remand. Resp. Br., ECF 54 at 10. But at that time, Save Jobs USA had no idea that Intervenors would burden the courts with yet another motion for delay in this case.

**V. DHS uses the wrong standard for irreparable harm.**

DHS's arguments relating to recoverable harm are irrelevant to this case. Resp. ECF 56 at 3-4. DHS itself notes that economic loss is an irreparable harm "when such loss threatens the very existence of the movant's business *or where it is irrecoverable.*" Resp. ECF 3 (emphasis added) (citing *Wis. Gas Co. v. Fed. Energy Regulatory Com.*, 758 F.2d 669, 674 (1985)). Under the APA, no compensation for injury is available. 5 U.S.C. § 706 (remedies). So here, the loss is irrecoverable because "no 'adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation.'" *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (quoting *Wis. Gas Co.*, 758 F.2d at 674).

DHS also claims that the harm to Save Jobs USA is not serious harm. Resp. Br. ECF 56 at 4. But "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). That is just what the requested preliminary injunction will do: preserve the *status quo* by not allowing the number of foreign competitors holding H-4 visas to increase in Save Jobs USA's job market during a stay. As for severity, the large number of foreign competitors allowed into the computer job market under the H-4 Rule, combined with the extended period of time they have been allowed to remain in the job market, certainly has made Save Jobs USA's harm severe. *See, e.g.*, *Smith v. Whitaker*, 734 A.2d 243, 251 (N.J. 1999) (taking into account the duration of injury to determine the extent of harm). An indefinite stay, if granted, would indefinitely increase that severity.

DHS claims that Save Jobs USA's arguments on the merits here is insufficient. Resp. ECF 56 at 5. But Save Jobs USA has submitted fifty pages of briefing on the merits in this Court, Op. Br. 26; Rep. Br. ECF 30; Op. Br., ECF 42; there would be little point in repeating it all here.

The authority DHS cites regarding public interest factors is inapposite. Resp.

Br., ECF 56 at 5. DHS cites *Int'l Internships Programs v. Napolitano* for the proposition that it is contrary to public policy "to make regulatory determinations about the issuance of employment-based visas." 798 F. Supp. 2d 92, 100 (D.D.C. 2011) (internal quotation marks omitted). This case does not involve the issuance of individual visas, a power delegated to DHS by Congress. Compl. ECF 1. The issue in this case is whether DHS can categorically grant separate work authorizations to non-employment visas. Comp. ECF 1. The courts have routinely issued preliminary injunctions blocking such categorical immigration-related actions. *E.g.*, *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242 (9th Cir. 2020); *HIAS, Inc. v. Trump*, 415 F. Supp. 3d 669 (D. Md. 2020); *Doe v. Trump*, No. 19-36020, 2020 U.S. App. LEXIS 14169 (9th Cir. May 4, 2020).

Furthermore, Save Jobs USA merely asks for a preliminary injunction that does over time that which Intervenors say DHS is going to do "imminently." Mot. Br., ECF 52-1 at 1. If Intervenors are right, such an injunction cannot possibly be contrary to the public interest, because it will have no effect. Only if a stay issues, but no rescission of the H-4 Rule occurs—and here, it is notable that DHS has made no representation to the Court that it will have in place a regulation eliminating H-4 employment anytime soon—can the public interest even be implicated by the requested preliminary injunction. In that circumstance, the public interest, defined by Congress, of protecting jobs for Americans weighs decisively in favor of the requested relief.

## CONCLUSION

For the reasons stated here and in the motion brief, the Court should grant a preliminary injunction barring DHS from issuing new work authorizations for H-4 non-immigrants during any stay of proceedings in this case.

Respectfully Submitted,

May 8, 2020

/s/ John Miano
D.C. Bar No. 1003068
Attorney for Save Jobs USA
(908) 273-9207
miano@colosseumbuilders.com

Christopher Hajec
D.C. Bar No. 492551
Immigration Reform Law Institute
25 Massachusetts Ave., N.W. Suite 335
Washington, D.C. 20001
(202) 232-5590

6

# IN THE
# UNITED STATES DISTRICT COURT
# FOR THE
# DISTRICT OF COLUMBIA

| | |
|---|---|
| Save Jobs USA<br>　　　　　　　　　　*Plaintiff*,<br>　　　*v.*<br>U.S. Dep't of Homeland Security<br>　　　　　　　　　　*Defendant*,<br>　　　*and*<br>Anujkumar Dhamija, *et al*.<br>　　　　　　　　　　*Intervenors*. | Civil Action No. 1:15-cv-00615 (TSC) |

## CERTIFICATE OF SERVICE

I certify that on May 8, 2020, I filed Plaintiff's Reply on Cross-motion for Preliminary Injunction with the Clerk of the Court using the CM/ECF system that will provide notice and copies to the Defendant's attorneys of record.

　

/s/ John Miano
D.C. Bar No. 1003068
Attorney for Save Jobs USA
(908) 273-9207
miano@colosseumbuilders.com