In the
# United States District Court
for the
## District of Columbia

| | |
|---|---|
| Save Jobs USA<br>31300 Arabasca Circle<br>Temecula CA 92592<br><div align="right">*Plaintiff,*</div><br><div align="center">*v.*</div><br>U.S. Dep't of Homeland Security<br>Office of General Counsel<br>Washington, DC 20258<br><div align="right">*Defendant.*</div><br><div align="center">*and*</div><br>Anujkumar Dhamija, *et al.*<br><div align="right">*Intervenors.*</div> | Civil Action No. 1:15-cv-00615 (TSC) |

### Plaintiff's Second Renewed Motion for Summary Judgment

Plaintiff Save Jobs USA respectfully moves the court to grant it summary judgment on all counts of its complaint under Fed. R. Civ. P. 56 and Local. R. 7(h). Summary Judgment is appropriate because this action is a review of an agency record.

Save Jobs USA submits the attached memorandum of points and authorities and proposed order in support of this motion. The appendix and supporting materials were previously submitted and are on the docket as ECF 26-1, ECF 26-2, and ECF 31.

Respectfully submitted,
Dated: April 2, 2021

_____
John M. Miano
D.C. Bar No. 1003068
Attorney of Record for Save Jobs
USA
(908) 273-9207
miano@colosseumbuilders.com

Christopher Hajec
D.C. Bar No. 492551
Immigration Reform Law Institute
25 Massachusetts Ave., N.W.
Suite 335
Washington, D.C. 20001
(202) 232-5590

In the
# United States District Court
for the
## District of Columbia

| | |
|---|---|
| Save Jobs USA<br>31300 Arabasca Circle<br>Temecula CA 92592<br><br>*Plaintiff,*<br><br>*v.*<br><br>U.S. Dep't of Homeland Security<br>Office of General Counsel<br>Washington, DC 20258<br><br>*Defendant*<br><br>*and*<br><br>Anujkumar Dhamija, *et al.*<br><br>*Intervenors.* | Civil Action No. 1:15-cv-00615 (TSC) |

**Memorandum of Law in Support of
Plaintiff's Second Renewed Motion for Summary Judgment**

i

# TABLE OF CONTENTS

Table of Authorities...........................................................................................iii

Motion for Summary Judgment....................................................................1

Introduction....................................................................................................1

Statement of the Facts....................................................................................1

Standard of Review.........................................................................................5

Argument..........................................................................................................6

   I. The H-4 Rule is in excess of DHS authority because
      Congress has not conferred on DHS general authority to
      authorize alien employment. .................................................................6

    A. Congress did not delegate to DHS general authority to
       authorize aliens to work in 8 U.S.C. § 1324a(h)(3). ...........................7

    B. Congress never mentioned or indicated in legislative
       history any delegation to the agency of general
       authority to permit alien employment..................................................9

    C. Congress is aware that it has not extended employment
       to aliens in H-4 visa status. ................................................................10

    D. The system Congress established for admitting foreign
       labor does not contemplate that the executive has
       general authority to permit aliens to work in the United States. ......10

  II. Under the doctrine of constitutional avoidance, this
      Court should decline to read the INA as delegating to
      DHS general authority to authorize aliens to work. ...........................12

    A. The H-4 Rule was promulgated under a claim of
       authority that is unconstitutional under the separation
       of powers doctrine. ...............................................................................13

    B. The H-4 Rule's claim of authority would require an
       unconstitutional transfer of legislative power to the executive. ........13

    C. Had Congress attempted to transfer to the executive
       shared authority to define classes of aliens eligible for
       employment, such an act would be unconstitutional
       under the non-delegation doctrine.......................................................14

III. DHS acted arbitrarily and capriciously in promulgating
the H-4 Rule. ..................................................................15

A. DHS improperly reversed a policy adopted by Congress.................15

B. The H-4 Rule is arbitrary and capricious because it
reverses longstanding policy without acknowledging
or explaining the reasons for the reversal. ...........................16

C. The H-4 Rule is arbitrary and capricious because
DHS's conclusion that adding 179,600 new workers in
one year will have "minimal impact" on U.S. workers
has no basis in fact. ....................................................17

Conclusion ..........................................................................19

## TABLE OF AUTHORITIES

Case Law:

*AFL-CIO v. Chao*, 496 F. Supp. 2d 76 (D.D.C. 2007) ..................................5

*Arkema v. Envtl. Prot. Agency*,
    618 F.3d 1 (D.C. Cir. 2010) ........................................................16

*Ass'n of Private Colleges and Universities, v. Duncan*,
    681 F.3d 427 (D.C. Cir. 2012) ....................................................16

*Bloch v. Powell*, 227 F. Supp. 2d 25 (D.D.C. 2002) ..........................5

*Bowsher v. Synar*, 478 U.S. 714 (1986)............................................ 13

*Buckley v. Valeo*, 424 U.S. 1 (1976) ................................................ 13

*Chevron U.S.A. Inc. v. Natural Resources Defense Council,*
    *Inc.*, 467 U.S. 837 (1984) ...........................................5–6, 15

*Clinton v. City of N.Y.*, 524 U.S. 417 (1998) ............................... 14

*EME Homer City Generation, L.P. v. Envtl. Prot. Agency,*
    696 F.3d 7 (D.C. Cir. 2012)........................................................8

*Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009) ....................................................................16

*Food & Drug Admin. v. Brown & Williamson Tobacco*
    *Corp.*, 529 U.S. 120 (2000) ................................................ 9, 15,–16

*Florida Power & Light Co. v. Lorion,*
    470 U.S. 729 (1985)......................................................................5

*Immigration & Naturalization Serv. v. St. Cyr,*
    533 U.S. 289 (2001) ....................................................................12

*Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.,*
    448 U.S. 607 (1980)....................................................................14

*Int'l Ladies' Garment Workers' Union v. Donovan,*
    722 F.2d 795 (D.C. Cir. 1983) ....................................................15

*J. W. Hampton, Jr., & Co. v. United States,*
    276 U.S. 394 (1928) ...................................................................14

*Loving v. Internal Revenue Serv.,*
    742 F.3d 1013 (D.C. Cir. 2014)..............................................8–10

*Loving v. United States*, 517 U.S. 748 (1996)........................... 13–14

*Mississippi v. Envtl. Prot. Agency,*
    744 F.3d 1334 (D.C. Cir. 2013)................................................17

iv

*Morrison v. Olson*, 487 U.S. 654 (1988) ............................................................ 13

*Motion Picture Ass'n of Am. v. Fed. Commc'ns Comm'n*,
309 F.3d 796 (D.C. Cir. 2002).................................................... 5–6, 11, 15

*Port Auth. of N.Y. & N.J. v. Dep't of Transp.*,
479 F.3d 21 (D.C. Cir. 2007)...................................................................6

*Ry. Labor Execs.' Ass'n v. Nat'l Mediation Bd.*,
29 F.3d 655 (D.C. Cir. 1994) .................................................................6

*Safari Club Int'l v. Zinke*, 878 F.3d 316 (D.C. Cir, 2017)............................6

*Save Jobs USA v. U.S. Dep't of Homeland Sec.*,
942 F.3d 504 (D.C. Cir. 2019) .........................................................4–5

*SecurityPoint Holdings, Inc. v. Transp. Sec. Admin.*,
769 F.3d 1184 (D.C. Cir. 2014) ...........................................................17

*Texas v. United States*, 787 F.3d 733 (5th Cir. 2015) .......................................8

*United States v. Mead Corp.*, 533 U.S. 218 (2001) .................................... 5–6

*United States v. Texas,* 136 S. Ct. 2271 (2015) .................................................. 8

*U.S. Ass'n of Reptile Keepers v. Jewell*,
103 F. Supp. 3d 133 (D.D.C. 2015) ..................................................9

*U.S. Telecomms. Ass'n v. Fed. Commc'ns Comm'n*,
855 F.3d 381 (2017) ....................................................................9

*Util. Air Regulatory Grp. v. Envtl. Prot. Agency*,
573 U.S. 302 (2014) .....................................................................9

*Verizon v. Fed. Commc'ns Comm'n*,
740 F.3d 623 (D.C. Cir. 2014)..........................................................11

*W. Union Tel. Co. v. Fed. Commc'ns Comm'n*,
665 F.2d 1126 (D.C. Cir. 1981) ....................................................8

*Whitman v. American Trucking Assns., Inc.*,
531 U.S. 457, 468 (2001) ............................................8, 11, 14–15

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952)...................................................................13

Constitution and Statutes:

U.S. Const., Art. I .........................................................................13

Immigration Reform and Control Act of 1986,
Pub. L. No. 99–603, 100 Stat. 3445 ......................................3, 7

v

Immigration Act of 1990,
Pub. L. No. 101-649, 104 Stat. 4978 ...................................................4, 14

Omnibus Consolidated Appropriations Act 1997,
Pub. L. No. 104-208, 110 Stat. 3009.........................................................8

Pub. L. No. 107-124, 115 Stat. 2402 (2002).................................................10

Pub. L. No. 107-125, 115 Stat. 2403 (2002) ................................................10

Homeland Security Act of 2002,
Pub. L. No. 107-296, 116 Stat. 2135.................................................... 10–11

5 U.S.C. § 706(2) ...........................................................................................1

5 U.S.C. § 706(2)(A) ...................................................................................15

5 U.S.C. § 706(2)(C) .....................................................................................5

8 U.S.C. § 1101(a)(15)...............................................................................1, 2

8 U.S.C. § 1101(a)(15)(A)(i) ........................................................................2

8 U.S.C. § 1101(a)(15)(H) ...........................................................................2

8 U.S.C. § 1101(a)(15)(H)(i)(b).................................................................2

8 U.S.C. § 1101(a)(15)(H)(i)(b1)...............................................................2

8 U.S.C. § 1101(a)(15)(H)(i)(c)..................................................................2

8 U.S.C. § 1101(a)(15)(H)(ii)(a) .................................................................2

8 U.S.C. § 1101(a)(15)(H)(ii)(b)..................................................................2

8 U.S.C. § 1101(a)(15)(H)(iii) ....................................................................3

8 U.S.C. § 1101(a)(15)(L)..............................................................................2

8 U.S.C. § 1101(a)(15)(O) ............................................................................2

8 U.S.C. § 1103 (Amendments Section) ........................................................10

8 U.S.C. § 1157 ..............................................................................................1

8 U.S.C. § 1182(a)(14)(1966) ......................................................................12

8 U.S.C. § 1182(m) .......................................................................................2

8 U.S.C. § 1182(n) ........................................................................................2

8 U.S.C. § 1182(t) .........................................................................................2

8 U.S.C. § 1184(g)(9) ....................................................................................2

8 U.S.C. § 1184(i) ..........................................................................................2

8 U.S.C. § 1188 .............................................................................................2

8 U.S.C. § 1324a ........................................................................... 3, 7, 14

   8 U.S.C. § 1324a(h) ................................................................. 4

      8 U.S.C. § 1324a(h)(3) ...................................................... 3, 7–9, 12

Regulations:

  Employment Authorization for Certain H-4 Dependent
    Spouses, 80 Fed. Reg. 10,284 (Feb. 25, 2015) ................. 1, 4, 7–9, 13, 16–18

  Enhancing Opportunities for H-1B1, CW-1, and E-3
    Nonimmigrants and EB-1 Immigrants,
    81 Fed. Reg. 2,068 (Jan. 15, 2016) ................................................... 7

  Improving and Expanding Training Opportunities for F-1
    Nonimmigrant Students With STEM Degrees and Cap-
    Gap Relief for All Eligible F-1 Students,
    81 Fed. Reg. 13,040 (Mar. 11, 2016) ................................................ 7

  International Entrepreneur Rule,
    82 Fed. Reg. 5,238 (Jan. 17, 2017) ................................................... 7

  8 C.F.R. § 214.1(a)(2) ................................................................ 1

Legislative History:

  S. Rep. No. 82-1072 ........................................................... 10–11

  H.R. Rep. No. 82-1365 ........................................................... 11

  H.R. Rept. 101-723 ................................................................. 4

  147 Cong. Rec. H5357 (daily ed. Sept. 5, 2001) ........................ 10, 15

  Border Security, Economic Opportunity, and Immigration
    Modernization Act, § 4102, S.744, 113th Congress ........................ 10, 16

  I-Squared Act of 2013, § 103, S. 169, 113th Congress ...................... 16

  I-Squared Act of 2015, § 104, S. 153, 114th Congress ..................... 16

Other Authorities:

  Federalist No. 51 ...................................................................... 13

  Fed. R. Civ. P. 56 ...................................................................... 1

  *Rep. Br. for the Pet'rs, Dep't of Homeland Security, et al. v.*
    *Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020) (No. 18-587) ........... 9

Bureau of Labor Statistics, Occupational Employment
    Statistics, national employment data for 2004–2014,
    available at https://www.bls.gov/oes/tables.htm ................................. 17–18

Government Accountability Office, *H-1B Visa Program:*
    *Reforms Are Needed to Minimize the Risks and Costs of*
    *Current Program*, GAO-11-26, Jan. 2011 .................................................. 18

George J. Borjas, *The Labor Demand Curve is Downward*
    *Sloping: Reexamining the Impact of Immigration on the*
    *Labor Market*, Quarterly Journal of Economics 118(4):
    1335–1374, November 2003 ....................................................................... 19

George J. Borjas, *The Labor Market Impact of High-Skilled*
    *Immigration, American Economic Review*, 2005, v95 (2, May).............. 19

Kirk Doran *et al.*, *The Effects of High-Skilled Immigration*
    *Policy on Firms: Evidence from H-1B Visa Lotteries*,
    NBER Working Paper No. 20668, Nov. 2014 .......................................... 18

Norman Matloff, *On the Need for Reform of the H-1B*
    *Non-Immigrant Visa In Computer-Related Occupations*,
    36 U. Mich. J.L. Reform 815 ..................................................................... 18

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, plaintiff, Save Jobs USA, moves for summary judgment on its complaint. Save Jobs USA seeks to have this Court hold that the U.S. Department of Homeland Security ("DHS") regulation Employment Authorization for Certain H-4 Dependent Spouses, 80 Fed. Reg. 10,284–312 (Feb. 25, 2015) ("H-4 Rule") is in excess of agency authority and set it aside pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).

## INTRODUCTION

Plaintiff, Save Jobs USA, is an unincorporated group of computer professionals who were employed at Southern California Edison until they were replaced by foreign workers on H-1B visas in 2015. *E.g.*, Bradly Aff., ECF 26-2, ¶¶ 5–11. These American workers bring this action under the APA to challenge a DHS regulation designed to increase the amount of foreign labor in the United States and circumvent statutory protections for American workers by allowing—without authorization in the statute that governs the visas for both H-4 dependents and their spouses—certain aliens with H-4 visas to work in this country. H-4 Rule, 80 Fed. Reg. at 10,284. The issue in this case is whether, as DHS claims, Congress has validly conferred on DHS a work-authorization power so sweeping and general that it permits DHS to issue the H-4 Rule even without any authorization in this governing statute.

## STATEMENT OF THE FACTS

Aliens are admitted into the United States as *immigrants*, *non-immigrants*, or *refugees*. 8 U.S.C. §§ 1101(a)(15) and 1157. Section 1101(a)(15) authorizes DHS to admit non-immigrants in various categories (for example, diplomats, crewmen, visitors, and journalists). The common name associated with a non-immigrant visa category is derived from its subsection within

§ 1101(a)(15). 8 C.F.R. § 214.1(a)(2). For example, the A-1 visa for diplomats is authorized by 8 U.S.C. § 1101(a)(15)(A)(i). There are a number of visa categories for admitting non-immigrants to perform labor. For example, the L-1 visa allows companies to transfer foreign managers to the United States, § 1101(a)(15)(L), and the O visa is for highly skilled workers of extraordinary ability, § 1101(a)(15)(O).

8 U.S.C. § 1101(a)(15)(H) authorizes the most important guestworker programs (that is, H-1B, H-1B1, H-1C, H-2A, and H-2B) and defines the terms under which holders of these visas may be used to perform labor in the United States. The H-1B category authorizes an alien to "perform services" in a "specialty occupation"[1] or as a "fashion model [] of distinguished merit and ability," but requires a labor condition application (requirements defined at § 1182(n)). § 1101(a)(15)(H)(i)(b). H-1B1 (governing treaty visas) authorizes admission to an alien in a "specialty occupation" but requires the employer to file an attestation related to wage and working conditions (requirements at § 1182(t)). § 1101(a)(15)(H)(i)(b1). H-1C authorizes admission for aliens to "perform services as a registered nurse" and requires the employer to file an attestation to the wages and working conditions (requirements at § 1182(m)). § 1101(a)(15)(H)(i)(c). H-2A authorizes admission for aliens to perform "agricultural labor or services" (with labor certification requirements at § 1188). § 1101(a)(15)(H)(ii)(a). H-2B authorizes admission to "perform other temporary service or labor … if unemployed persons capable of performing such service or labor cannot be found in this country" (with a labor certification required under § 1184(g)(9)). § 1101(a)(15)(H)(ii)(b). The same section also authorizes DHS to approve H-3 visas to aliens for a "training program that is

---

[1] A *specialty occupation* is defined as one that generally requires a college degree or equivalent knowledge. 8 U.S.C. § 1184(i).

not designed primarily to provide productive employment" (with no labor certification requirement). § 1101(a)(15)(H)(iii).

The H-4 visa category for dependents was created by Pub. L. No. 91-225, 84 Stat. 116 (1970), and is defined in an unnumbered clause at the end of § 1101(a)(15)(H). That clause, authorizing the admission of H-4 dependents as non-immigrants, reads in its entirety: "and the alien spouse and minor children of any such alien specified in this paragraph if accompanying him or following to join him." This visa is thus available to the dependents of H-1B, H-1B1, H-2A, H-2B, and H-3 visa holders defined in the same paragraph. *Id*.

The Immigration Reform and Control Act of 1986, Pub. L. No. 99–603, § 101, 100 Stat. 3445 ("IRCA") (creating a new section § 274a of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1324a) for the first time criminalized and imposed civil sanctions for the act of hiring an alien who is not authorized to work in the United States. Section 1324a(h)(3) defines the term *unauthorized alien* to mean the following:

> (3) DEFINITION OF UNAUTHORIZED ALIEN.—As used in this section, the term 'unauthorized alien' means, with respect to the employment of an alien at a particular time, that the alien is not at that time either (A) an alien lawfully admitted for permanent residence, or (B) authorized to be so employed by this Act or by the Attorney General.

INA § 274a(h)(3) (codified at 8 U.S.C. § 1324a(h)(3)). Other sections of IRCA contain seven specific directives for the Attorney General to authorize aliens without visas who are in the legalization process to engage in employment. § 201 ("Legalization": three directives) 100 Stat. 3397, 3399, § 301 ("Lawful Residence for Certain Special Agriculture Workers": four directives) 100 Stat. 3418, 3421, 3428.

Section 1101(a)(15)(H) was radically revised in the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 ("IMMACT90"), in response to abusive administrative interpretation that had undermined the INA's domestic labor protections. H.R. Rept. 101-723, pp. 44. IMMACT90 replaced the H-1 and H-2 guestworker visas with the current, more specific visas largely in place now. 8 U.S.C. § 1101(a)(15)(H). The H-4 visa, however, remained unchanged. *Id.*

On February 25, 2015, DHS promulgated the regulations at issue here, the H-4 Rule. 80 Fed. Reg. at 10,284. The H-4 Rule went into effect on May 26, 2015. 80 Fed. Reg. at 10,297. The Rule grants certain H-4 visa holders work authorization through regulation. Specifically, it authorizes aliens to work who are the spouses of principal beneficiaries of an approved Form I-140, Immigrant Petition for Alien Worker or of aliens who been granted H-1B status under sections 106(a) and (b) of the American Competitiveness in the Twenty-first Century Act of 2000. 80 Fed. Reg. at 10,307.[2] DHS's claimed legal authority for granting alien employment under the H-4 Rule is 8 U.S.C. § 1324a(h) (defining the term *unauthorized alien*). 80 Fed. Reg. at 10,285. The purpose of the H-4 Rule is to retain H-1B aliens who would otherwise leave the country and to attract additional H-1B workers. 80 Fed. Reg. at 10,284, 10,285, 10,286, 10,288, 10,289, 10,295, 10,305.

Plaintiff, Save Jobs USA, is an unincorporated group of American workers who were employed in computer related occupations at Southern California Edison until 2015 when they were replaced by foreign workers on H-1B visas employed by the Indian multinational conglomerate company Tata. Affidavit of Brian Buchanan ("Buchanan Aff.") ECF 26-2, ¶¶ 3–13; Affidavit of Julie

---

2  DHS stated in its findings that it, "may consider expanding H-4 employment eligibility in the future," 80 Fed. Reg. at 10,289, and "may consider expanding employment authorization to other dependent nonimmigrant categories in the future." 80 Fed. Reg. at 10,292.

5

Gutierrez ("Gutierrez Aff.") ECF 26-2, ¶¶ 3–11; Affidavit of D. Steven Bradley ("Bradley Aff.") ECF 26-2, ¶¶ 3–12. The United States Court of Appeals for the D.C. Circuit has held that the plaintiffs have standing to bring this action. *Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 942 F.3d 504 (D.C. Cir. 2019).

## STANDARD OF REVIEW

The courts of this circuit have repeatedly held that cases arising under the APA are typically resolved by summary judgment on the basis of the administrative record compiled by the agency. *E.g.*, *Bloch v. Powell*, 227 F. Supp. 2d 25, 30–31 (D.D.C. 2002); *AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 81–82 (D.D.C. 2007). "The factfinding capacity of the district court is thus typically unnecessary to judicial review of agency factfinding .... [C]ourts are to decide, on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

A court should "hold unlawful and set aside agency action, findings, and conclusions found to be ... in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). The D.C. Circuit elucidated this standard in *Motion Picture Ass'n of Am. v. Fed. Commc'ns Comm'n*:

> In *Chevron*, the Court held that, "if the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." This is so-called "*Chevron* Step One" review. If Congress "has not directly addressed the precise question" at issue, and the agency has acted pursuant to an express or implicit delegation of authority, the agency's interpretation of the statute is entitled to deference so long as it is "reasonable" and not otherwise "arbitrary, capricious, or manifestly contrary to the statute." This is so-called "*Chevron* Step Two" review. In either situation, the agency's interpretation of the statute is not entitled to

> deference absent a delegation of authority from Congress to regulate in the areas at issue.
>
> *Mead* reinforces *Chevron's* command that deference to an agency's interpretation of a statute is due only when the agency acts pursuant to "delegated authority." The Court in *Mead* also makes it clear that, even if an agency has acted within its delegated authority, no *Chevron* deference is due unless the agency's action has the "force of law."

309 F.3d 796, 801 (D.C. Cir. 2002) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) and *United States v. Mead Corp.*, 533 U.S. 218 (2001)).

## ARGUMENT

### I. The H-4 Rule is in excess of DHS authority because Congress has not conferred on DHS general authority to authorize alien employment.

This case presents a simple question of law: Does DHS have the authority to permit H-4 visa holders to work? In order for an agency to receive deference in its interpretation, it must have "acted pursuant to congressionally delegated authority to make law and with the intent to act with the force of law...." *Safari Club Int'l v. Zinke*, 878 F.3d 316, 326 (D.C. Cir. 2017). "Statutory interpretations by agencies are 'not entitled to deference absent a delegation of authority from Congress to regulate in the areas at issue.'" *Port Auth. of N.Y. & N.J. v. Dep't of Transp.*, 479 F.3d 21, 27 (D.C. Cir. 2007) (quoting *Motion Picture Ass'n*, 309 F.3d 796 at 801). "Were courts to presume a delegation of power absent an express withholding of such power, agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with *Chevron* and quite likely with the Constitution as well." *Ry. Labor Execs.' Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 671 (D.C. Cir. 1994) (*en banc*).

7

### A.   Congress did not delegate to DHS general authority to authorize aliens to work in 8 U.S.C. § 1324a(h)(3).

The statutory terms of the H-4 visa do not authorize employment. 8 U.S.C. § 1101(a)(15)(H). Instead, DHS claims in the H-4 Rule that alien "employment may be authorized by statute or by the Secretary" of Homeland Security. 80 Fed. Reg. at 10,294. Considering the vast scope of DHS's claimed authority to permit alien employment through regulation, "one would have expected to see some debate or mention of the expansion" of that authority. *U.S. Ass'n of Reptile Keepers v. Jewell*, 103 F. Supp. 3d 133, 157 (D.D.C. 2015). Yet no such debate or mention exists. Nevertheless, DHS asserts that there was an implicit delegation of such authority in the definition of the term *unauthorized alien* in 8 U.S.C. § 1324a(h)(3). Section § 1324a was enacted in the Immigration Reform and Control Act of 1986 ("IRCA"), Pub. L. No. 99–603, § 101, 100 Stat. 3445 (creating the new section § 274a of the INA codified at 8 U.S.C. § 1324a) that, for the first time, criminalized and imposed civil sanctions on the act of hiring an alien who is not authorized to work in the United States. Section 1324a(h)(3) defines those aliens that it is unlawful for an employer to hire.

The H-4 Rule was the first of several regulations to claim the DHS could authorize alien employment to classes of aliens through regulation independently from Congress. *E.g.*, 80 Fed. Reg. at 10,294; Enhancing Opportunities for H-1B1, CW-1, and E-3 Nonimmigrants and EB-1 Immigrants, 81 Fed. Reg. 2,068 (Jan. 15, 2016); Improving and Expanding Training Opportunities for F-1 Nonimmigrant Students With STEM Degrees and Cap-Gap Relief for All Eligible F-1 Students, 81 Fed. Reg. 13,040 (Mar. 11, 2016); International Entrepreneur Rule, 82 Fed. Reg. 5,238, 5,239 (Jan. 17, 2017).

The obvious problem with the claim that 8 U.S.C. § 1324a(h)(3) confers on DHS unlimited authority to grant aliens employment is that subsection *refers* to power that the Secretary may possess through other provisions but it does not *grant* any power at all. *See W. Union Tel. Co. v. Fed. Commc'ns Comm'n*, 665 F.2d 1126, 1136–37 (D.C. Cir. 1981) (holding a section was "only definitional" where it began with "as used in this section" and contained only definition subsections); *Texas v. United States*, 787 F.3d 733, 760 (5th Cir. 2015), *aff'd by an equally divided court,* 136 S. Ct. 2271 (2015) (observing § 1324a(h)(3) was merely definitional).

Another problem with the claim that 8 U.S.C. § 1324a(h)(3) confers on DHS such vast authority to define classes of aliens eligible for employment is that "Congress [] does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions." *Whitman v. American Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001); *accord Loving v. Internal Revenue Serv.*, 742 F.3d 1013, 1021 (2014). Following the Supreme Court, the D.C. Circuit rejects the proposition that Congress can confer vast power on an agency implicitly through ancillary provisions. *E.g., EME Homer City Generation, L.P. v. Envtl. Prot. Agency*, 696 F.3d 7, 28 (D.C. Cir. 2012) (citing *American Trucking Assns.*, 531 U.S. at 468).

Furthermore, Congress's continuing enactments in an area show that it has not delegated its authority in that area to an agency. *Loving v. Internal Revenue Serv.*, 742 F.3d 1013, 1020–21 (D.C. Cir. 2014). Since the enactment of § 1324a in 1986, Congress has continued to enact legislation giving DHS both discretionary and mandatory authority to extend employment to classes of aliens. For example, the Omnibus Consolidated Appropriations Act 1997 provided that "[a]n applicant for asylum is not entitled to employment authorization, but such authorization may be provided under regulation by the At-

torney General." Pub. L. No. 104-208, § 604, 110 Stat. 3009, 3009-693. Under DHS's claim of general authority to permit alien employment under § 1324a, Congress's subsequent grant of this discretionary employment authority was otiose. *See* 80 Fed. Reg. at 10,287 (claiming DHS already has the power to authorize employment to any alien through regulation under § 1324a).

Recognizing the absurdity of the claim that vast authority to permit alien employment comes from a term definition, the government has since disavowed that claim. "Section 1324a … cannot reasonably be interpreted to have 'brought about the enormous and transformative expansion' in the Secretary's authority.…" *Rep. Br. for the Pet'rs, Dep't of Homeland Security, et al. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020) (No. 18-587) (quoting *Util. Air Regulatory Grp. v. Envtl. Prot. Agency*, 573 U.S. 302, 324 (2014)).

### B. Congress never mentioned or indicated in legislative history any delegation to the agency of general authority to permit alien employment.

No provision in the INA explicitly delegates to DHS (successor to the Attorney General) the authority to define classes of aliens eligible for employment. The Supreme Court "expect[s] Congress to speak clearly if it wishes to assign to an agency decisions of vast 'economic and political significance.'" *Util. Air*, 573 U.S. at 350 (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)). At the very least, had Congress intended to confer on DHS independent authority to permit alien employment through regulation, "even implicitly—one would have expected to see some debate or mention.…" *United States Ass'n of Reptile Keepers v. Jewell*, 103 F. Supp. 3d 133, 157 (D.D.C. 2015). But there is no legislative history going back to the enactment of the INA in 1952 indicating that Congress conferred on the agency such power. Even if there had been, an implicit delegation is only sufficient for "interstitial matter[s]." *United States Telecomms. Ass'n v.*

*Fed. Commc'ns Comm'n*, 855 F.3d 381, 403 (2017). The lack of any explicit statement by Congress thus is quite enough to show that it has not delegated a vast power to an agency. *Loving v. Internal Revenue Serv.*, 742 F.3d 1013, 1021 (D.C. Cir. 2014).

### C. Congress is aware that it has not extended employment to aliens in H-4 visa status.

Congress has authorized spouses of principal aliens in certain nonimmigrant visa classifications to work. In 2002, Congress authorized DHS to grant employment authorization to spouses of E visa treaty aliens, Pub. L. No. 107-124, 115 Stat. 2402, and to spouses of L visa intra-company transfer workers, Pub. L. No. 107-125, 115 Stat. 2403. In the debate on these bills, Congressman Wexler stated that "I hope that this bill is the beginning of an understanding that we should allow spouses in other nonimmigrant classifications who accompany their husband or wife to the United States to be able to obtain work authorization." 147 Cong. Rec. H5357 (daily ed. Sept. 5, 2001). Since then, several bills have been introduced that included provisions to authorize aliens on H-4 visas to work, but Congress has rejected them all. *E.g.*, Border Security, Economic Opportunity, and Immigration Modernization Act, § 4102, S.744, 113th Congress. These actions show that Congress is well aware that it has not granted H-4 visaholders the ability to work, either directly or through the conferral of a general work-authorization power on the agency.

### D. The system Congress established for admitting foreign labor does not contemplate that the executive has general authority to permit aliens to work in the United States.

The 1952 INA was a "complete revision" of our immigration laws, providing a clear starting point for the legislative history of the immigration system. S. Rep. No. 82-1072, at 2 (1952). Section 103 of the INA (codified at 8 U.S.C. § 1103) provided for the general authority of the Attorney General to admin-

ister the immigration system and to promulgate regulations "necessary for carrying out his authority." This provision has been amended several times. 8 U.S.C. § 1103 (Amendments Section). Notably, the Homeland Security Act of 2002 transferred this authority to the Secretary of Homeland Security. Pub. L. No. 107-296, 116 Stat. 2135, 2273–74. Throughout its entire prior history, however, the courts have never interpreted 8 U.S.C. § 1103 to grant DHS the authority to admit aliens into the American labor market. It is implausible that Congress would have created a comprehensive scheme governing the employment of aliens in the INA and, at the same time, conferred on the executive the authority to supplant that scheme through regulation in a general provision. *See Verizon v. Fed. Commc'ns Comm'n*, 740 F.3d 623, 639 (D.C. Cir. 2014) ("Congress does not … 'hide elephants in mouseholes.'") (quoting *American Trucking Assns.*, 531 U.S. at 468); *Motion Picture Ass'n*, 309 F.3d at 798–99, 802–03 (finding the general authority of the Federal Communications Commission to regulate television did not grant it unlimited authority to act as it sees fit with respect to all aspects of television transmissions).

The lack of such authority to permit any alien to work in the United States is clear from legislative history. Both the House and Senate reports on the INA state that it "provides strong safeguards for American labor" and that all aliens (with three exceptions not applicable here) seeking to perform labor are excluded if the Secretary of Labor determines that American workers are available or that the foreign labor would adversely affect American workers. S. Rep. No. 82-1137, at 11; H.R. Rep. No. 82-1365, at 50–51 (identical text). Neither the House nor the Senate report on the INA makes any mention of granting the executive authority to permit foreign labor through regulation or that such regulation would be exempt from these requirements. S. Rep. No. 82-1137 or H.R. Rep. No. 82-1365. If such authority had been intended,

surely Congress would have listed this class of labor among the exceptions to labor protection requirements—but it did not. *Id.*

The Immigration and Nationality Act of 1965 strengthened the protections for American workers by requiring an affirmative certification by the Secretary of Labor, prior to the admission of foreign labor, that American workers were not available and that the alien labor would not adversely affect American workers. § 9, 79 Stat. 917–18 (then codified at 8 U.S.C. § 1182(a)(14)). Like the 1952 INA, the 1965 Act did not create an exemption from labor certification for aliens granted permission to work through regulation. *Id.* Over the decades, Congress has repeatedly required most foreign labor to comply with statutory labor protections and it has never included labor independently authorized through regulation as one of the exceptions. *Id.*; INA, § 9, 66 Stat. at 282; Immigration and Nationality Act of 1965, § 9, 79 Stat. at 817.

## II.   Under the doctrine of constitutional avoidance, this Court should decline to read the INA as delegating to DHS general authority to authorize aliens to work.

At the very least, because of glaring constitutional problems (discussed below) with the already-unacceptable interpretation of § 1324a(h)(3), or any other INA provision, as a delegation of general authority to DHS to allow aliens to work, this Court should decline to adopt it under the canon of constitutional avoidance. *See*, *a fortiori*, *Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 299–300 (2001) ("[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is fairly possible, we are obligated to construe the statute to avoid such problems"). The natural and obvious interpretations are (1) that the clause "or by the Attorney General" in 8 U.S.C. § 1324a(h)(3) refers to the many instances where Congress has directed or allowed the agency to extend alien employment through regulation and (2)

that the INA grants DHS discretionary power to authorize aliens to work through regulation only by explicit grants of such power. These interpretations avoid all constitutional issues.

### A. The H-4 Rule was promulgated under a claim of authority that is unconstitutional under the separation of powers doctrine.

The Supreme Court has repeatedly affirmed the importance "of the separation of governmental powers into the three coordinate branches." *Morrison v. Olson*, 487 U.S. 654, 693 (1988). The division of power among the three branches is a key safeguard against the expansion or diminution of any one branch. *Buckley v. Valeo*, 424 U.S. 1, 122–23 (1976) (citing Federalist No. 51). To justify the *H-4* Rule, DHS claims it has equal authority with Congress to permit alien employment. 80 Fed. Reg. at 10,294 (stating that alien "employment may be authorized by statute or by the Secretary."). Yet the Supreme Court has "not hesitated to invalidate provisions of law which violate" the principle of separation of powers. *Morrison v. Olson*, 487 U.S. 654, 693 (1988). If Congress had created a system where it shared the general power to define classes of aliens eligible for employment with an executive agency, such a rearrangement of powers assigned to Congress under U.S. Const., Art. I, would be unconstitutional. *Cf. Bowsher v. Synar*, 478 U.S. 714, 721–27 (1986) (citing examples where the Court had held encroachments on separate powers had been unconstitutional).

### B. The H-4 Rule's claim of authority would require an unconstitutional transfer of legislative power to the executive.

"[T]he Constitution is neither silent nor equivocal about who shall make laws which the President is to execute. The first section of the first article says that 'All legislative Powers herein granted shall be vested in a Congress of the United States ....'" *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S.

579, 587–88 (1952). Furthermore, "[t]he lawmaking function … may not be conveyed to another branch or entity." *Loving v. United States*, 517 U.S. 748, 758 (1996); *see also Clinton v. City of N.Y.*, 524 U.S. 417, 481 (1998) (holding the statutory creation of a line-item veto was an unconstitutional delegation of power to the executive branch). Congress has defined classes of aliens eligible for employment in nearly every major immigration act. *E.g.*, INA, § 101, 66 Stat. at 166–69; Immigration and Nationality Act of 1965, Pub. L. No. 89-236, § 9, 79 Stat. 911, 917; IMMACT90, §§ 204–21, 104 Stat. at 4978, 5019–28. Clearly, defining such classes is a lawmaking function. If Congress had attempted in 8 U.S.C. § 1324a, or elsewhere in the INA, to confer shared general authority to define classes of aliens eligible for employment on DHS, that would have been an unconstitutional transfer of legislative authority. *Cf. Loving*, 517 U.S. at 758; *City of N.Y.*, 524 U.S. at 481.

**C. Had Congress attempted to transfer to the executive shared authority to define classes of aliens eligible for employment, such an act would be unconstitutional under the non-delegation doctrine.**

The Supreme Court "repeatedly [has] said that when Congress confers decisionmaking authority upon agencies *Congress* must 'lay down by legislative act an intelligible principle to which the person or body authorized to act' is directed to conform." *Am. Trucking Ass'ns*, 531 U.S. at 472 (quoting *J. W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928); *see also Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 685 (1980) (Rehnquist, J. concurring) ("[The nondelegation doctrine] ensures … that important choices of social policy are made by Congress, the branch of our Government most responsive to the popular will."). If one makes the implausible assumption that Congress implicitly conferred on DHS shared authority to define classes of aliens eligible for employment through regula-

tion, Congress did so while giving no guidance whatsoever on how this authority was to be used. Even if Congress had enacted DHS's claimed blanket grant of authority, it was not through a legislative act that provides an "intelligible principle" to which the executive must conform. Any such delegation of authority would be unconstitutional under *Am. Trucking Ass'ns*, 531 U.S. at 472.

### III.  DHS acted arbitrarily and capriciously in promulgating the H-4 Rule.

Under *Chevron* Step 2, a court should "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Motion Picture Ass'n* 309 F.3d at 801; 5 U.S.C. § 706(2)(A). "An agency's decision will normally be found arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *E.g.*, *Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 814 (D.C. Cir. 1983).

### A.  DHS improperly reversed a policy adopted by Congress.

The H-4 Rule reverses a policy in place for 45 years. DHS Br. at 39–40. Once Congress adopts an agency interpretation, the agency is not free to change it. *Brown & Williamson*, 529 U.S. at 155–56. Congress's understanding that aliens cannot work on H-4 visas is well documented. For example, in the debate over authorizing spouses of aliens on treaty visas to work, Congressman Wexler stated that he hoped such work authorizations would be extended to the spouses of other categories of visa holders, thereby recognizing the need

for congressional action to allow such work. 147 Cong. Rec. H5357 (daily ed. Sept. 5, 2001). In recent years, several bills have been introduced and debated that would allow aliens who possess an H-4 visa to work. *E.g.,* Border Security, Economic Opportunity, and Immigration Modernization Act, *supra*, § 4102; I-Squared Act of 2013, § 103, S. 169, 113th Congress; I-Squared Act of 2015, § 104, S. 153, 114th Congress. These attempts demonstrate that Congress understands it has not authorized H-4 aliens to work and has adopted that interpretation. Changing the policy that H-4 aliens may not work when it has been adopted by Congress is arbitrary and capricious. *Brown & Williamson*, 529 U.S. at 155–56.

   **B. The H-4 Rule is arbitrary and capricious because it
      reverses longstanding policy without acknowledging
      or explaining the reasons for the reversal.**

A long-standing policy is not immutable. An agency can change course, as long as it acknowledges and explains why it is making the change.

> Of course, the Agency is entitled to change its mind as long as its new direction falls within the ambit of its authorizing statute and the policy shift is adequately explained. The requirement that an agency provide a reasoned explanation for its actions ordinarily means the agency must "display awareness that it is changing position."

*Arkema v. Envtl. Prot. Agency*, 618 F.3d 1, 6 (D.C. Cir. 2010) (quoting *Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 503 (2009)). "An agency's departure from past practice can, however, if unexplained, render regulations arbitrary and capricious." *Ass'n of Private Colleges and Universities, v. Duncan*, 681 F.3d 427, 441 (D.C. Cir. 2012). In the H-4 Rule, DHS provided no acknowledgement that it was reversing a policy in place for 45 years, let alone an explanation of why it was reversing this policy. 80 Fed. Reg. at 10,284–312. That glaring omission, as well, makes the H-4 Rule arbitrary and capricious. *Ass'n of Private Colls.*, 681 F.3d at 441.

### C. The H-4 Rule is arbitrary and capricious because DHS's conclusion that adding 179,600 new workers in one year will have "minimal impact" on U.S. workers has no basis in fact.

An agency's action is arbitrary and capricious if the agency has entirely failed to consider an important aspect of the problem it faces. *SecurityPoint Holdings, Inc. v. Transp. Sec. Admin.*, 769 F.3d 1184, 1187–88 (D.C. Cir. 2014). The experience that the Save Jobs USA plaintiffs had of being replaced by H-1B workers demonstrates that attracting more such workers has some negative effect. Buchanan Aff. ¶¶ 3–13; Gutierrez Aff. ¶¶ 3–11; Bradley Aff. ¶¶ 3–12. Yet, despite the likelihood of such effects of the H-4 Rule on Americans—a likelihood that follows from the basis of the competitor standing doctrine itself—DHS gave no serious consideration to them.

In its findings, DHS brushes off the adverse potential of the rule with the conclusory declaration that the rule will only have a "minimal impact" on American workers. 80 Fed. Reg. at 10,295. DHS reached this unrealistic conclusion by making the apples-to-oranges comparison of the number of workers added under the H-4 rule per year to the total size of the American workforce and asserting that the difference was small. *Id*. The correct comparison for such an analysis is to compare increases to increases: the increase in United States employment to the increase in available labor caused by the H-4 Rule. *See, Mississippi v. Envtl. Prot. Agency*, 744 F.3d 1334, 1344 n.1 (D.C. Cir. 2013) ("logic rejects comparisons of apples and oranges").

From 2009 to 2014, the average monthly job creation in the United States was 74,677, and from 2004 to 2014 it was 58,340.[3] Bureau of Labor Statistics, Occupational Employment Statistics, national employment data for 2004–

---

3 BLS National Employment Figures: (2014) 135,128,260, (2013) 132,588,810, (2012) 130,287,700, (2011) 128,278,550, (2010) 127,097,160, (2009) 130,647,610, (2008) 135,185,230, (2007) 134,354,250, (2006) 132,604,980, (2005) 130,307,840, (2004) 128,127,360.

2014[4]. Compared to job creation, the 179,600 workers DHS planned to add in the first year under the H-4 Rule is immense and will have a major impact. 80 Fed. Reg. at 10,285. Indeed, when making an apples to apples comparison, the amount of labor being added under the H-4 Rule is staggering.[5] By failing to consider the rate of job creation before adding foreign labor to the job market through the H-4 Rule, DHS has acted arbitrarily and capriciously.

The full administrative record demonstrates closemindedness on DHS's part. Rather than looking objectively at the issue, DHS compiled an administrative record that is entirely one-sided, containing *only* materials supporting DHS's desired outcome of encouraging more H-1B workers. A.R. *passim*. For example, A.R. 31–79 contains a study supporting the proposition that more H-1B workers would spur patent creation. Yet the record contains no studies refuting that debatable conclusion. *E.g.*, Kirk Doran *et al.*, *The Effects of High-Skilled Immigration Policy on Firms: Evidence from H-1B Visa Lotteries*, NBER Working Paper No. 20668, Nov. 2014.

The record contains a report finding H-1B workers are highly skilled and highly paid. A.R. 14,927–75. Yet the record omits reports contradicting those conclusions. *E.g.*, Government Accountability Office, *H-1B Visa Program: Reforms Are Needed to Minimize the Risks and Costs of Current Program*, GAO-11-26, Jan. 2011, p. 97 (finding employers classified 52% of H-1B workers at the lowest of four skill levels); Norman Matloff, *On the Need for Reform of the H-1B Non-Immigrant Visa In Computer-Related Occupations*, 36 U. Mich. J.L. Reform 815, 870 (describing how H-1B workers are "gen-

---

4  Available at https://www.bls.gov/oes/tables.htm (last visited Mar. 8, 2020)

5  Furthermore, DHS states that it received 13,000 comments on the H-4 Rule. 80 Fed. Reg. at 10,287. Of those, DHS stated that "[a]fter careful consideration of public comments, DHS is adopting the proposed regulatory amendments with minor wording changes to improve clarity and readability. 80 Fed. Reg. at 10,285. Apparently, none of the comments had any influence on DHS in arriving at the final rule, and the entire notice and comment process was a mere exercise in futility.

erally cheaper than Americans"); George J. Borjas, *The Labor Market Impact of High-Skilled Immigration, American Economic Review*, 2005, v95 (2, May), pp. 56–60 ("[F]oreign-born doctorates … have a significant adverse effect on the earnings of competing workers."); George J. Borjas, *The Labor Demand Curve is Downward Sloping: Reexamining the Impact of Immigration on the Labor Market*, Quarterly Journal of Economics 118(4): 1335–74, November 2003.

By failing even to consider any evidence that ran contrary to its foreordained conclusions, DHS acted arbitrarily and capriciously when it promulgated the H-4 Rule.

## CONCLUSION

Because Congress has not conferred upon DHS general authority to define classes of aliens eligible for employment through regulation, and because any such delegation of power would be unconstitutional, the H-4 Rule is in excess of DHS authority. Therefore, the Court must set it aside.

Respectfully submitted,
Dated: April 2, 2021




John M. Miano
D.C. Bar No. 1003068
Attorney of Record for Save Jobs USA
(908) 273-9207
miano@colosseumbuilders.com

Christopher Hajec
D.C. Bar No. 492551
Immigration Reform Law Institute
25 Massachusetts Ave., N.W. Suite 335
Washington, D.C. 20001
(202) 232-5590

In the

# United States District Court

for the

## District of Columbia

| | |
|---|---|
| Save Jobs USA<br>31300 Arabasca Circle<br>Temecula CA 92592<br><br>*Plaintiff*,<br><br>*v.*<br><br>U.S. Dep't of Homeland Security;<br>Office of General Counsel<br>Washington, DC 20258<br><br>*Defendant.*<br><br>*and*<br><br>Anujkumar Dhamija, *et al.*<br><br>*Intervenors.* | Civil Action No. 1:15-cv-00615 (TSC) |

**[Proposed] Order**

Upon consideration of the Plaintiff's and Defendant's Cross-Motions for Summary Judgment, Memoranda of Law supporting those motions, and replies, it is hereby

ORDERED that the Plaintiff's Renewed Motion for Summary Judgment is GRANTED, and further

ORDERED that the regulation Employment Authorization for Certain H−4 Dependent Spouses, 80 Fed. Reg. 10,284 (codified at 8 C.F.R. §§ 214, 274a) (the "H-4 Rule") is vacated and further

ORDERED that the Secretary of Homeland Security to revoke all work authorizations granted under Employment Authorization for Certain H−4 Dependent

Spouses and notify all such aliens of revocation and further

ORDERED that the court permanently enjoins the Secretary of Homeland Security and his successors from authorizing work under H-4 visas through administrative action and further

ORDERED that the Plaintiffs are awarded attorney fees and litigation costs.

Dated: _____, 2021


_____

The Honorable Tanya S. Chutkan
United States District Judge

In the

# United States District Court

for the

## District of Columbia

| | |
|---|---|
| Save Jobs USA<br>31300 Arabasca Circle<br>Temecula CA 92592<br><div align="right">*Plaintiff,*</div><br><div align="center">*v.*</div><br>U.S. Dep't of Homeland Security;<br>Office of General Counsel<br>Washington, DC 20258<br><div align="right">*Defendant.*</div><br><div align="center">*and*</div><br>Anujkumar Dhamija, *et al.*<br><div align="right">*Intervenors..*</div> | Civil Action No. 1:15-cv-00615 (TSC) |

### Certificate of Service

I certify that on April 2, 2021, I filed the attached Plaintiff's Renewed Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system that will provide notice and copies to the Defendant's attorneys of record.

John M. Miano
D.C. Bar No. 1003068
Attorney of Record
Save Jobs USA