UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SAVE JOBS USA**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 15-cv-0615 (TSC) |
| **U.S. DEPARTMENT OF HOMELAND SECURITY**, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

In this Administrative Procedure Act ("APA") action, Plaintiff Save Jobs USA, an association representing Southern California Edison workers, challenges a Department of Homeland Security ("DHS") rule allowing H-4 visa-holders to apply for employment authorization. Plaintiff claims that the rule lacks statutory authorization, violates the nondelegation doctrine, and is arbitrary and capricious. Both parties have moved for summary judgment. Intervenors Immigration Voice and Anujkumar Dhamija, as well as *amici curiae* comprising more than forty companies and organizations have filed briefs in support of Defendant's motion. Having considered all those filings, and for the reasons stated herein, Plaintiff's motion for summary judgment will be DENIED, and Defendant's motion for summary judgment will be GRANTED.

### I.   BACKGROUND

The court has set forth the relevant background for this case in prior opinions, so only a brief description is necessary here. *See Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 210 F.

1

Supp. 3d 1 (D.D.C. 2016); *Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108 (D.D.C. 2015).

### A. Statutory and Regulatory Framework

The Immigration and Naturalization Act ("INA") authorizes DHS to admit foreign workers into the U.S. to perform certain types of labor. *See* 8 U.S.C. § 1101(a)(15)(H). The "H-1B" category of visa-holders are admitted "to perform services . . . in a specialty occupation" for an initial period of three years, extendable for three additional years. *Id*. § 1101(a)(15)(H)(i)(b). Spouses and minor dependents of H-1B visa-holders are granted H-4 visas allowing them to reside in the United States as well. *See id*.

Generally, H-1B visa-holders and their H-4 spouses and dependents may reside in the U.S. for up to six years, after which time they must leave and remain abroad for at least one year before seeking to reenter in the same status. *See* 8 U.S.C. § 1184(g)(4); 8 C.F.R. § 214.2(h)(13)(iii)(A). However, H-1B visa-holders may transition to legal permanent resident ("LPR") status—*i.e.*, become a green card holder—through the employer-sponsored immigration process. This process requires the H-1B visa-holder's employer to obtain a Department of Labor certification that there are no U.S. workers who are "able, willing, qualified[,] . . . and available" to perform the job, and that the "wages and working conditions" of "similarly employed" American workers will not be "adversely affected." 8 U.S.C. § 1182(a)(5)(A)(i). If the Secretary of Labor approves the certification, the employer then submits a Form I-140 petition for DHS's approval. *See id*. § 1154(a)(1)(F), (b); 8 C.F.R. § 204.5(a). Due to frequently oversubscribed quotas for the number of H-1B visa-holders who may transition to LPR status, there are often long delays, and an applicant may have to leave the U.S. before receiving a decision on their status adjustment application.

To prevent the potential for disruption to employers and families, Congress passed the American Competitiveness in the Twenty-First Century Act of 2000 ("AC21 Act").  Under that Act, if an applicant has an approved Form I-140 petition and is unable to adjust their status because of per-country visa limits, they may extend their H-1B stay in three-year increments until their application for LPR status has been adjudicated.  *See* Pub. L. No. 106-313, § 104(c), 114 Stat. 1251, 1253; 8 C.F.R. § 214.2(h)(13)(iii)(E).  H-1B visa-holders who are the subject of labor certification applications or Form I-140 petitions may also be eligible for recurring one-year extensions of H-1B status if 365 days have elapsed since the application or petition was filed.  *See* AC21 Act § 106(a)-(b), 114 Stat. at 1253-54, *as amended by* 21st Century Department of Justice Appropriations Authorization Act, Pub. L. No. 107-273, § 11030A, 116 Stat. 1762, 1836-37 (2002); 8 C.F.R. § 214.2(h)(13)(iii)(D).

The rule at issue in this case permits a subset of H-4 visa-holders to apply for Employment Authorization Documents ("EADs") allowing them to work in the United States.  To be eligible, the H-4 visa-holder's H-1B spouse must either be transitioning to LPR status by way of either an extension past their sixth year under the AC21 Act or be the subject of an approved Form I-140 petition but cannot adjust status because of visa oversubscription.  *See* Employment Authorization for Certain H-4 Dependent Spouses, 80 Fed. Reg. 10,284, 10,285 (Feb. 25, 2015) (codified at 8 C.F.R. §§ 214.2, 274a) ("H-4 Rule").  The H-4 Rule aims to "ameliorate certain disincentives that currently lead H-1B nonimmigrants to abandon efforts to remain in the United States while seeking LPR status, thereby minimizing disruptions to U.S. businesses employing such workers."  *Id*.  The Rule underwent notice-and-comment procedures, *see* Employment Authorization for Certain H-4 Dependent Spouses*,* 79 Fed. Reg. 26,886 (May

12, 2014) (proposed rule), and took effect on May 26, 2015, *see* 80 Fed. Reg. 10,284 (Feb. 25, 2015).

**B. Procedural History**

On April 23, 2015, Plaintiff filed this suit and moved for a preliminary injunction to prevent Defendant from implementing the H-4 Rule. *See* Pl. Mot. Prelim. Inj. ECF No. 2. The court denied Plaintiff's motion on May 24, 2015. *See* May 24, 2015 Order, ECF No. 14; 105 F. Supp. 3d at 116. Later that year, the parties cross-moved for summary judgment. *See* Pl. Second Summ. J. Mot., ECF No. 26;[1] Def. First Summ. J. Cross-Mot., ECF No. 27. The court denied Plaintiff's motion and granted Defendant's motion, ruling that Plaintiff lacked standing. *See* 210 F. Supp. 3d at 13. Plaintiff appealed and the D.C. Circuit reversed and remanded for further proceedings. *Save Jobs USA v. Dep't of Homeland Sec.*, 942 F.3d 504 (D.C. Cir. 2019). Plaintiff and Defendant have once again cross-moved for summary judgment. ECF Nos. 67, 69.

## II.     LEGAL STANDARD

The APA commands that a court set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or that is "contrary to [a] constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(A)-(B).

Summary judgment is typically appropriate when the pleadings and evidence demonstrate that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). But Rule 56(a)'s standards do not apply in an APA action where "the district judge sits as an appellate tribunal," and the "[e]ntire case on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (internal quotation marks omitted). Instead of reviewing the record for disputed facts, "the function of the district court is to determine whether or not as a

---

[1] Plaintiff's first motion for summary judgment was dismissed without prejudice. *See* July 1, 2015 Minute Order.

matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (quotation marks and citation omitted). This standard of review is "narrow," and a court applying it "is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

### III.    ANALYSIS

#### A.  Statutory Authorization

Plaintiff's primary contention is that Congress has never granted DHS authority to allow foreign nationals, like H-4 visa-holders, to work during their stay in the United States. But as the D.C. Circuit has recently explained, that contention runs headlong into the text of the INA, decades of Executive-branch practice, and both explicit and implicit congressional ratification of that practice.

The Circuit's analysis in *Washington Alliance of Technology Workers v. United States Department of Homeland Security* is directly applicable to this case. 50 F.4th 164 (D.C. Cir. 2022) ("*Washtech*"). There, a labor union representing STEM workers claimed DHS lacked statutory authority to authorize employment as part of a post-graduation, "Optional Practical Training" program for F-1 student visa-holders. *Id.* at 190. The D.C. Circuit squarely rejected that argument for at least three reasons, all of which foreclose Plaintiff's parallel assertion here.

The first reason was "the INA's explicit grant of authority to the Department," which not only "commands DHS to 'establish such regulations' as its Secretary 'deems necessary for carrying out his authority,'" but also "specifically provides that the 'admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe.'" *Id.* (first quoting 8 U.S.C. § 1103(a)(3), then quoting *id.* § 1184(a)(1)). The Attorney General's authority to set the "time" and "conditions" of

visa-holders' stay has been transferred to DHS. *Id.* at 170 n.1. In the case of F-1 students, the D.C. Circuit held, "[w]hether they can work" is such a condition, just like rules governing "where they can study," the "courses they must take," and "what any accompanying spouse or children may do while in the country." *Id.* at 190 (citations omitted). The INA's text therefore expressly contemplates DHS authorizing employment for foreign nationals. *Id.*

Second, "[h]istory corroborates that Congress meant what it plainly said in the INA when it granted DHS authority in section 1184(a)(1) to set the conditions of F-1 students' admission." *Id.* "DHS and its predecessors have been authorizing student visa-holders to work at jobs related to their studies since at least 1947." *Id.*; *see also id.* at 171-73 (reviewing history). "And across decades of the Executive doing so openly, . . . Congress has chosen to maintain the relevant provisions" of the INA. *Id.* at 190; *see id.* at 180-83 (reviewing history). In fact, "Congress also expressly exempted F-1 students from several forms of wage taxes—a measure that would be completely unnecessary if those students lacked authorization to work." *Id*. at 191. Thus, "Congress has not just kept its silence by refusing to overturn [an] administrative construction, but has ratified it with positive legislation," which renders "that construction virtually conclusive." *Id.* (quoting *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986)).

Finally, and relatedly, Congress verified "that DHS may lawfully authorize employment for nonimmigrants" when it passed the 1986 Immigration Control and Reform Act ("IRCA"). *Id.* "IRCA prohibits the employment of 'unauthorized aliens,'" which it defines as "one who is neither 'lawfully admitted for permanent residence' nor 'authorized to be so employed by this chapter or by the Attorney General'—now DHS." *Id.* (first quoting 8 U.S.C. § 1324a(a)(1), then quoting *id.* § 1324a(h)(3)). "IRCA's express recognition that aliens may be 'authorized to be . . .

employed . . . by' DHS confirms that Congress has deliberately granted the Executive power to authorize employment." *Id.*

The D.C. Circuit's holding and reasoning in *Washtech* apply with equal force in this case. Like the Optional Practical Training program at issue there, Defendant promulgated the H-4 Rule here pursuant to its time-and-conditions and general regulatory authority, as confirmed by IRCA. *See* 80 Fed. Reg. at 10,285 & 10,294 (citing 8 U.S.C. §§ 1103(a)(3), 1184(a), 1324a(h)(3)(B)). On their face, the "time" and "conditions" of a visa-holder's stay in the United States include "what an accompanying spouse . . . may do while in the country," as well as whether "[w]hether they can work." *Washtech*, 50 F.4th at 190. IRCA verifies the plain meaning of those terms in the INA by recognizing that some visa-holders may be "authorized to be . . . employed . . . by" DHS. 8 U.S.C. § 1324a(h)(3). In short, Congress has expressly and knowingly empowered Defendant to authorize employment as a permissible condition of an H-4 spouse's stay in the United States.

The fact that the Executive Branch has had longstanding and open responsibility for authorizing employment for similar visa classes further manifests Congress's approval of Defendant exercising that authority. For example, DHS and its predecessors have authorized employment not just for students, *see Washtech*, 50 F.4th at 171-73, but also for their spouses and dependents, *see* Brief of Leading Companies and Business Associations as *Amici Curiae* in Support of Defendant at 12 n.5, ECF No. 80 ("*Amici* Brief") (collecting agency policy documents dating back to 1965 permitting, among others, J-2 spouses to work). For instance, DHS has long extended work authorization to spouses of foreign government officials and spouses of employees or officers of international organizations. *See* Employment Authorization to Aliens in the United States, 46 Fed. Reg. 25,079 (May 5, 1981). Rather than refuting the

straightforward interpretation of the INA that permits DHS to exercise that authority, Congress has repeatedly blessed it by leaving the relevant provisions of the INA untouched, even as it as amended other portions of the statute during the last several decades. *See Washtech*, 50 F.4th at 183; *see, e.g.*, *Amici* Brief at 18 n.8 (citing several recent amendments to 8 U.S.C. § 1324a). That constitutes "persuasive evidence that the interpretation is the one intended by Congress." *Schor*, 478 U.S. at 846. Mindful of controlling precedent in this Circuit, this court will not disturb it.[2]

Plaintiff's arguments do nothing to undermine Defendant's statutory authority. First, Plaintiff argues that "Congress did not delegate to DHS general authority to authorize aliens to work in 8 U.S.C. § 1324a(h)(3)." Plaintiff's Second Renewed Motion for Summary Judgment at 7, ECF No. 67 ("Pl.'s MSJ"); *id.* at 7-9. Plaintiff "is right that section 1324a(h)(3) is not the source of the relevant regulatory authority," but that is beside the point, which is that "section 1324a(h)(3) expressly acknowledges that employment authorization need not be specifically conferred by statute; it can also be granted by regulation, as it has been" here. *Washtech,* 50 F.4th at 191-92. Plaintiff does not cite, much less contest, the explicit statutory grant of time-and-conditions authority to DHS in 8 U.S.C. § 1184(a)(1).

Second, Plaintiff admits that Defendant (or its predecessors) have long authorized employment for visa-holders but asserts that Congress has never implicitly endorsed that practice. *See* Reply in Support of Plaintiff's Second Renewed Motion for Summary Judgment at 9-11, ECF No. 76 ("Pl.'s Reply"); Pl.'s MSJ at 9-10. But Plaintiff's attempts to support that

---

[2] Because the statute's text and history plainly permit Defendant to authorize employment for H-4 spouses, the court does not analyze Defendant's contention that it may do so under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Were there any ambiguity in the INA, however, that ambiguity would counsel deference because Defendant has reasonably resolved it. *Id.* at 866; *Washtech*, 50 F.4th at 192-93; *see infra* Section III.C.

assertion fall short. To start, it argues that there is no legislative history suggesting Congress intentionally granted DHS power to authorize employment. Pl.'s MSJ at 9-10. In fact, as the Circuit noted in *Washtech*, the 1950 Senate study that was the "genesis" of the INA recognized that the Executive branch was already authorizing employment for nonimmigrant visa-holders. 50 F.4th at 181 (citing S. Rep. No. 81-1515, at 503). Knowing that, Congress nonetheless decided to maintain all the relevant grants of authority to the Executive. *Id.* Thus, while Plaintiff is right that the INA "provides strong safeguards for American labor," *see* S. Rep. No. 82-117 at 11, Congress also recognized that the Executive might authorize employment to further the statute's other broad and varied goals—such as promoting "foreign policy, constitutional guarantees, public welfare, the health, the economy, and the productivity of the Nation," Congressional and Administrative News, 82nd Congress, Second Session, 1952, v. 2, p. 1750. As discussed above, "[m]ore than seventy years of history and practice since it enacted the 1952 INA shows that Congress has not changed its mind." *Washtech*, 50 F.4th at 164.

Lastly, Plaintiff cites the fact that several members of Congress have introduced but never passed bills to grant H-4 spouses work authorization. Pl.'s MSJ at 10. But the Supreme Court has noted that "Congressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction, including the inference that the existing legislation already incorporated the offered change." *Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990) (internal quotation marks and citation omitted). This case illustrates that problem. At most, the introduction of those bills shows that some members of Congress thought it would be a good idea for H-4 spouses to have work opportunities; it says nothing about whether Congress believed that, even if it took no action, the Executive could still authorize that employment. Indeed, Congress could have rejected those proffered bills precisely

because it wanted to leave the choice whether to authorize employment for H-4 spouses up to DHS, given its expertise in the field. *See id.* There is accordingly no logical basis for inferring that Congress believes Defendant powerless to promulgate the H-4 Rule.

For these reasons, the court concludes that Defendant possessed the requisite statutory authority to issue the H-4 Rule.

## B. Separation of Powers and Non-Delegation Doctrine

Plaintiff's second challenge is related to its first. It argues that any interpretation of the INA allowing Defendant to authorize employment for H-4 spouses would violate the constitutional separation of powers and related "nondelegation doctrine." Pl.'s MSJ at 13-15. This argument, too, is unavailing in light of the D.C. Circuit's decision in *Washtech*.

"The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta v. United States*, 488 U.S. 361, 371 (1989). Under that system, Congress "may not transfer to another branch 'powers which are strictly and exclusively legislative.'" *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (quoting *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42-43 (1825)). "This principle does not mean, however, that only Congress can make a rule of prospective force." *Loving v. United States*, 517 U.S. 748, 758 (1996). "Congress may 'obtain[] the assistance of its coordinate Branches'—and in particular, may confer substantial discretion on executive agencies to implement and enforce the laws." *Gundy*, 139 S. Ct. at 2123 (quoting *Mistretta*, 488 U.S. at 372). And because "Congress simply cannot do its job absent an ability to delegate power under broad general directives," the Supreme Court has "held time and again, that a statutory delegation is constitutional as long as Congress 'lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed

to conform.'" *Id.* (same). The "intelligible principle" standard is "not demanding," and is satisfied unless "Congress ha[s] failed to articulate *any* policy or standard" at all. *Id.* at 2129.

This case does not raise those concerns. Plaintiff asserts that even if Congress granted Defendant power to authorize employment for nonimmigrant visa-holders, it "did so while giving no guidance whatsoever on how this authority was to be used." Pl.'s MSJ at 14-15. But in *Washtech*, in which the plaintiffs also made nondelegation arguments, *see* 50 F.4th at 191, the D.C. Circuit explained how the INA's text and structure establishes the "limiting principle" to "constrain DHS's regulatory authority," *id.* at 189.

> Section 1184(a)(1)[] . . . provides time-and-conditions authority specifically for the "admission to the United States of any alien *as a nonimmigrant*." 8 U.S.C. § 1184(a)(1) (emphasis added). Notably, however, the INA does not define "nonimmigrant" as a general category, but only as a set of discrete classes. *Id.* § 1101(a)(15)(A)-(V). Those dozens of class definitions are each very brief, specifying little more than a type of person to be admitted and the purpose for which they seek to enter. No definition states exactly how long the person may stay, nor spells out precisely what the nonimmigrant may or may not do while here for the specified purpose. Those are parameters that Congress expected the Executive to establish "by regulations," which is exactly what section 1184(a)(1) grants DHS the authority to do. In short: The INA uses visa classes to identify who may enter temporarily and why, but leaves to DHS the authority to specify, consistent with the visa class definitions, the time and conditions of that admission.

*Id.* at 177-78 (footnote omitted). Thus, "[p]ursuant to the Secretary's obligation to exercise its rulemaking power in keeping with the statute's text and structure, DHS must ensure that the times and conditions it attaches to the admission of [nonimmigrant visa-holders] are reasonably related to the purpose for which they were permitted to enter." *Id.* at 179.

As the next section explains, the H-4 Rule satisfies that statutory requirement. But the requirement's mere existence provides an intelligible principle of delegation and is therefore fatal to Plaintiff's nondelegation challenge.

### C. Arbitrary and Capricious Claim

Plaintiff's final argument is that Defendant's promulgation of the H-4 Rule was arbitrary and capricious in violation of the APA, 5 U.S.C. § 706(2)(A).

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.

*State Farm*, 463 U.S. at 43 (quotation omitted). Plaintiff asserts two violations of that standard, but neither is persuasive.

First, Plaintiff argues that the H-4 Rule reversed without explanation a prior policy established by Congress and DHS—*i.e.*, that H-4 spouses had no work authorization. The court disagrees. As *Washtech* explained, the INA empowers (but does not require) Defendant to set certain "conditions" of nonimmigrant visa-holders' stay in the United States, potentially including work authorization. *See* 50 F.4th at 177-78. Defendant's choice to exercise its statutory discretion did not change that policy. After Defendant and Intervenors made the same argument in their briefing, Plaintiff failed to respond. *See* Memo. in Support of Def.'s Cross-Mot. for Summary Judgment and Opp. to Pl.'s Mot. for Summary Judgment at 23-28, ECF No. 69-1 ("Def.'s MSJ"); Intervenor's Memo. in Support of DHS's Mot. for Summary Judgment and in Opp. to Save Jobs USA's Mot. for Summary Judgment at 27-28; Pl.'s Reply at 1-15. Indeed, Plaintiff's Reply did not address any of the arguments opposing its arbitrary and capricious challenge, *see* Pl.'s Reply at 1-17, and thereby effectively concedes them, *Am. Waterways Operators v. Regan*, 590 F. Supp. 3d 126, 138 (D.D.C. 2022) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.") (citations omitted).

In any event, Defendant did explain why it had decided to authorize employment for H-4 spouses. In doing so, Defendant also demonstrated how the H-4 Rule "is reasonably related to the nature and purpose of the [H-4] visa class." *Washtech*, 50 F.4th at 179; *see supra* Section III.B. As relevant here, that class includes individuals "accompanying" or "following to join" the holder of an H-1B visa in the United States. 8 U.S.C. § 1101(a)(15)(H). In turn, the H-1B class enables the entry of workers who come "to perform services . . . in a specialty occupation." *Id.* As the H-4 Rule explained, "[r]etaining highly skilled workers who intend to acquire LPR status" is critical to fulfill the purposes of the H-1B visa class, including benefiting from those individuals' "advances in entrepreneurship and research and development, which are highly correlated with overall economic growth and job creation." 80 Fed. Reg. at 10,284. But upon review of recent data and reports from experts, *see id.* at 10,304-05, Defendant concluded that "the lack of employment authorization for H-4 dependent spouses" undermines that retention because it "often gives rise to personal and economic hardships for the families of H-1B nonimmigrants," leading them to "abandon efforts to remain in the United States," *id.* at 10,284-85. Accordingly, granting employment authorization for H-4 spouses furthers the dual statutory purposes of H-1B workers performing specialty services in the United States, and H-4 spouses accompanying them. *Id.*

Second, Plaintiff initially contends that Defendant "entirely failed to consider" the "negative effect" that the H-4 Rule could have on American workers. Pl.'s MSJ at 17. But in the next paragraph, Plaintiff recognizes—as it must—that Defendant did consider that effect, and instead takes aim at Defendant's methodology for doing so. *Id.* (citing 80 Fed. Reg. at 10,295). Defendant noted that the H-4 Rule would "not result in 'new' additions to the labor market" because "it simply accelerates the timeframe by which [H-4 spouses] can enter the labor

market." 80 Fed. Reg. at 10,309. In addition, Defendant calculated that "even if every eligible H-4 spouse took advantage of the rule in the first year (the year with the most newly-eligible H-4 spouses) it would amount to less than 0.12% of the U.S. workforce." Def.'s MSJ at 27 (citing 80 Fed. Reg. at 10,295 & 10,309). By contrast, Defendant noted that commenters predicting negative impacts on American jobs did not provide any empirical support for that prediction. 80 Fed. Reg. at 10,296. In light of that data, Defendant concluded that the H-4 Rule's benefits outweighed its "minimal" economic costs. *Id.* at 10,295-96. That suffices to establish a "rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43. Plaintiff's insistence that it would have been better to compare "the number of workers added under the H-4 rule per year" to "the average monthly job creation" in the United States rather than "the total size of the American workforce," Pl.'s MSJ at 17-18, does not render Defendant's analysis—based on the evidence before it—irrational.

As a result, Plaintiff has failed to demonstrate that the H-4 Rule was arbitrary and capricious.

## IV.   CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment, ECF No. 67, will be DENIED, and Defendant's Cross-Motion for Summary Judgment, ECF No. 69, will be GRANTED. A corresponding Order will accompany this Memorandum Opinion.

Date: March 28, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge